## COLEMAN v. MANUEL.
### No. 9992.

Court of Civil Appeals of Texas. Austin.

Nov. 14, 1951.

Rehearing Denied Dec. 5, 1951.

John T. Lindsey, Port Arthur, for appellant.

Cecil, Keith & Mehaffy and Jas. W. Mehaffy, Beaumont, for appellee.

HUGHES, Justice.

This suit was by R. O. Coleman, appellant, against Preston Manuel, appellee, for the recovery of damages for personal injuries and for property losses sustained as the result of a collision of two automobiles under the control of the respective parties.

Trial was to a jury. When appellant had rested his case appellee moved that the jury be instructed to return a verdict in his behalf. This motion was granted and judgment was rendered for appellee upon such verdict. The court in its judgment recited that appellant "failed to introduce evidence that any act of negligence on the part of defendant was a proximate cause of the accident" and that appellant "was guilty of contributory negligence as a matter of law."

We will review the above action of the trial court and in so doing will consider the evidence in a light most favorable to appellant.

The collision occurred between 6:30 and 7:00 P. M. on November 19, 1950, within the corporate limits of the City of Beaumont on a street known as the Port Arthur Road. This street runs approximately north and south and is a four lane highway, there being an outside and inside lane running north and similar lanes running south. Separating these two sets of lanes and in the center of the highway there were double yellow stripes and a slight ridge.

The collision occurred at a point on the highway, described above, opposite the Pyramid Drive-in Theatre, which is on the east side of the street.

Both of the cars, driven by the parties, were or had been traveling in the same

direction south, towards down-town Beaumont.

Appellee, desiring to attend the Pyramid Theatre, stopped his car on the pavement after partly making a left turn so that his car was parked at an angle of about 45° in relation to the street and so that his car blocked passage of cars on the inside lane going south.

Appellant had been driving in the outside lane where the traffic was very heavy. He was following a paneled truck at a distance of about thirty feet and his speed was twenty-five or thirty miles an hour. Desiring to pass the truck appellant observed that no cars were approaching from the rear and the inside lane appeared to be clear in front. He then turned from the outside to the inside lane and for the first time saw appellee's car parked about 12 feet distant. It was then impossible, because of the traffic, for appellant to return to the outside lane and although he applied the brakes as quickly as possible he crashed into appellee's car.

At the time of the collision it was dark or at least semidark and both cars had their lights burning. Appellant testified that when he looked down the inside lane he did not see appellee's car nor the taillights of appellee's car. He explained this by saying that appellee's car was parked at such an angle that the lights were not visible until his own car turned to a similar angle when he moved from the outside to the inside lane.

The collision did not occur at a street intersection nor at a place where a left turn could be lawfully made. Signs on the street read "no left" and "no turns across yellow stripes or raised portions." See Art. 6701d, Sec. 62, Vernon's Ann.Civ. St., where such turns as appellee was attempting to make are expressly prohibited.

Appellant also testified that when he turned from the outside lane to the passing lane he did not anticipate that a car would be parked there and he did not anticipate that a car would be making a left turn in the "middle of the block" and

that he did not know that it was a custom for cars to make left turns at this point.

Appellee makes much of the fact that there were two police officers directing traffic in the vicinity of the theatre and asserts he could not be negligent in obeying the orders of a traffic officer.

Section 23, Art. 6701d, supra, does provide that no person shall wilfully fail or refuse to comply with any lawful order or directions of any police officer invested by law with authority to direct, control, or regulate traffic.

The evidence shows that two city policemen were stationed on the east (picture show) side of the highway. They were working on "their own time, not city time." When cars stopped, as did appellee, these officers would, from time to time, stop the northbound traffic so that cars could turn left into the picture show. It was only after appellee, and other similar minded car drivers, stopped that the police officers were called upon to give them any traffic directions. These officers did not have anything to do with appellee stopping on the highway and he could have proceeded south, as he should have done, without any hindrance from the officers.

We need not decide that the directions given by these officers were unlawful, but the question is, at least, debatable. They were giving aid to motorists in violating traffic signs, in violating provisions of our uniform traffic act and in creating a definite traffic hazard. The purpose of this extra curriculum activity by these officers was not in the interest of the public but was for the private benefit of a commercial enterprise.

■ Appellee, however, stopped the car of his own volition and cannot, therefore, hide behind the simulated protection of the right of these officers to direct traffic.

Among the grounds of negligence pleaded by appellant were that appellee was negligent in stopping his car as he did and in permitting it to be parked at an angle and so as to obstruct traffic moving south upon the highway. These negligent acts were alleged to be the proximate cause of appellant's injuries and damages.

■ We believe the evidence was sufficient to go to the jury upon issues of negligence and proximate cause.

Also, we are unable to agree with the trial court that appellant was guilty of contributory negligence as a matter of law. He was driving at a reasonable rate of speed and entering the passing lane where he had a right to go. He was not required, as a matter of law, to anticipate that he would there encounter a car diagonally parked for the purpose of making an illegal turn.

Upon discovering the car appellant did all he could to avoid the crash.

The judgment of the trial court is reversed and this cause is remanded for trial.

Reversed and remanded.